UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA MESSANO,<br><br>   Plaintiff,<br><br> v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC., et al.,<br><br>   Defendants. | Case No. 16-cv-05697-HSG<br><br>**ORDER GRANTING DEFENDANT EQUIFAX'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 27 |

Pending before the Court is the motion to dismiss filed by Defendant Equifax, Inc. ("Equifax"). Dkt. No. 27 ("Mot."). Plaintiff Lisa Messano alleges that Equifax violated the Fair Credit Reporting Act ("FCRA"). Dkt. No. 1 ("Compl."). Plaintiff filed an opposition to Equifax's motion to dismiss, Dkt. No. 41 ("Opp."), and Equifax replied, Dkt. No. 46 ("Reply"). Having considered the parties' submissions, the Court finds the matter appropriate for decision without oral argument. *See* Civil L.R. 7-1(b). For the reasons set forth below, the Court **GRANTS** Equifax's motion to dismiss with prejudice in part and with leave to amend in part.

**I. BACKGROUND**

 **A. Factual History**

For purpose of this motion, the Court accepts the following facts as true.

On February 9, 2012, Plaintiff pulled a credit report from third-party vendor CIN Legal Data Services ("CIN"). Compl. ¶¶ 87-88. The credit report from CIN was compiled from information gathered by the three major credit reporting agencies ("CRAs"): Experian Information Solutions, Inc. ("Experian"), Equifax, and TransUnion, LLC ("TransUnion"). *Id.* ¶ 89. This credit report reflected an estimated score of 569, and estimated Plaintiff's 12-month post-bankruptcy credit score as 590. *Id.* ¶¶ 90-91. Subsequently, on February 27, 2012, Plaintiff filed

for Chapter 13 bankruptcy. *Id*. ¶ 93. Plaintiff's bankruptcy plan was confirmed on April 20, 2012. *Id*. ¶ 97. Under her plan, Plaintiff's unsecured creditors are allowed an 18.70% disbursement of their filed claims. *Id*. ¶ 96.

On February 26, 2016, Plaintiff ordered another three-bureau report from Experian. *Id*. ¶ 98. Plaintiff noted seven different trade lines on her credit report, all reporting "inaccurate, misleading, or incomplete information that did not comport with credit reporting industry standards." *Id*. ¶ 99. Specifically, Plaintiff found "multiple trade lines continu[ing] to report [her] accounts with past due balances, late payments, open, and/or repossessed," with some accounts failing to "register that Plaintiff was making payments on the account through [her] Chapter 13 plan." *Id*. In response, on July 11, 2016, Plaintiff sent dispute letters to Experian, TransUnion, and Equifax, noting that she had filed for bankruptcy and that the "account was not reporting the bankruptcy accurately or worse not at all." *Id*. ¶ 101. Plaintiff's letters requested that her creditors investigate the correct way to report her bankruptcy. *Id*. She asserted that, given her bankruptcy filing, there should not be any past due balance reported. *Id*. In addition, she contended that the account should not be listed as "charged off, transferred or sold," show an "inaccurate monthly payment," or contain any indication that it was in collections. *Id*. Plaintiff believes that each CRA received Plaintiff's dispute letter and sent her dispute to the data furnishers. *Id*. ¶ 102.

On August 16, 2016, Plaintiff ordered another three-bureau report from Experian. *Id*. ¶ 103. However, Plaintiff was "not pleased to notice that the inaccuracies had not been updated or removed." *Id*. ¶ 104. Instead, she noticed that her Experian score dropped by 32 points, Equifax score dropped by 29 points, and TransUnion score dropped by 48 points. *Id*. Plaintiff asserts that the reports did not accurately characterize her debt in light of her Chapter 13 plan. *See id*. ¶¶ 105-06.

Plaintiff also contends that her data furnisher, Bank of America, did not follow industry standards for credit reporting. *Id*. ¶ 105. The accuracy of credit scores relies on data furnishers and CRAs using the reporting industry standard format called Metro 2. *See id*. ¶ 49. Within the Metro 2 format, the Consumer Information Indicator ("CII") is a field that sets out special

conditions that apply to a particular consumer. *Id*. ¶ 55. Specifically, the CII code "D" indicates that a Chapter 13 bankruptcy petition has been filed and is active, but no discharge has been entered. *Id*. ¶ 59. A CII code D conveys to creditors that while payments were not made nor received, they are also not anticipated because the account is no longer in a collectable status. *Id*. ¶¶ 59, 77. A deviation from these standard reporting practices creates a negative inference with regard to a consumer's creditworthiness. *Id*. ¶ 86. Plaintiff asserts that Bank of America did not comply with industry standards when it failed to list the correct CII D code. *Id*. ¶ 105.

**B. Procedural History**

On October 5, 2016, Plaintiff filed the current suit against Experian, Bank of America, and Equifax. Compl. Plaintiff asserted a cause of action under the FCRA against each defendant, as well as a cause of action under the California Consumer Credit Reporting Agencies Act against Bank of America. *Id*. ¶¶ 109-43. On November 15, 2016, Experian moved to dismiss the complaint. Dkt. No. 22. Equifax subsequently also filed its own motion to dismiss on December 22, 2016. Dkt. No. 27. However, on April 19, 2017, Plaintiff filed a notice of settlement with Experian. Dkt. No. 55. Bank of America has not appeared. Thus, the only relevant pending motion is Equifax's motion to dismiss.

**II. LEGAL STANDARD**

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted. "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the

3

complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If dismissal is appropriate under Rule 12(b)(6), a court "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (quotation marks and citation omitted). However, a district court may decline to allow leave to amend based on "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of amendment." *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008) (internal quotation marks and brackets omitted).

## III. ANALYSIS

The FCRA aims to "ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). As such, the FCRA imposes certain requirements on CRAs and data furnishers. *See generally* 15 U.S.C. § 1681 *et seq*. Specifically, if a consumer disputes the "completeness or accuracy of any item of information," the FCRA requires CRAs to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate." 15 U.S.C. § 1681i(a)(1)(A). Upon such dispute, the CRAs must also provide prompt notice of the dispute to the data furnisher. *See* 15 U.S.C. § 1681i(a)(2)(A). The FCRA provides a private right of action for "willful" or "negligent" violations. 15 U.S.C. § 1681n, 1681o.

For the reasons set forth below, the Court finds that Plaintiff fails to sufficiently plead an actual inaccuracy in Equifax's credit reporting.

### A. Failure to Plead Inaccuracy

To assert a claim against a CRA for failure to conduct a reasonable reinvestigation, a

4

plaintiff must show that an "actual inaccuracy" exists in the reported information. *Carvalho v. Equifax Info. Servs., LLC,* 629 F.3d 876, 890 (9th Cir. 2010). A credit report may be inaccurate because it is "patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Id.* (internal quotation marks omitted).

Plaintiff alleges that Equifax failed to conduct a reasonable investigation under 15 U.S.C. § 1681i(a)(1), and failed to correct misleading or inaccurate statements on the account. Compl. ¶¶ 122-23. The crux of Plaintiff's allegation rests on her argument that it is inaccurate or misleading to report a delinquency or past due balance after a Chapter 13 plan confirmation but before discharge. *See id.* ¶¶ 99-104; Opp. at 8.

The Court disagrees with Plaintiff's argument. As an initial matter, the Court agrees with Equifax that Plaintiff has not alleged any factual inaccuracy with Equifax's reporting, such as by claiming that Plaintiff did not actually incur the debt, or that she had already obtained a discharge. *See* Mot. at 6. With respect to Plaintiff's argument that it is inaccurate to report a delinquency post-confirmation but pre-discharge, numerous courts in this district have repeatedly and persuasively rejected that argument. *See, e.g.*, *Jaras v. Experian Info. Sols., Inc.*, No. 16-cv-03336 LHK, 2016 WL 7337540, at *3 (N.D. Cal. Dec. 19, 2016), *appeal filed*, No. 17-15201 (9th Cir. Feb. 2, 2017) ("[A]s a matter of law, it is not misleading or inaccurate to report delinquent debts during the pendency of a bankruptcy proceeding prior to the discharge of the debts."); *Harris v. Experian Info. Sols., Inc.*, No. 16-cv-02162 BLF, 2017 WL 1354778, at *4 (N.D. Cal. Apr. 13, 2017) (listing cases from this district and elsewhere rejecting same theory of liability); *Mensah v. Experian Info. Sols., Inc.*, Nos. 16-cv-05689-WHO, 16-cv-05702-WHO, 16-cv-05715-WHO, 16-cv-06318-WHO, 16-cv-06358-WHO, 16-cv-06359-WHO, 2017 WL 1246892, at *7 (N.D. Cal. Apr. 5, 2017) ("[I]t is not inaccurate to report an account's full unpaid balance after plan confirmation, but before discharge.").

In response, Plaintiff contends that these decisions failed to recognize the impact of a Chapter 13 confirmation plan. *See* Opp. at 9. Plaintiff argues that under 11 U.S.C. §§ 1322(b)(2) and 1327 (the statutes governing Chapter 13 confirmations), her confirmation plan is a final and binding judgment that modified her underlying debt. *See* Opp. at 12. Section 1322(b)(2) provides

that a confirmation plan may "modify the rights of holders of secured claims . . . or of holders of unsecured claims." 11 U.S.C. § 1322(b)(2). Section 1327(a) provides that "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a). Citing to bankruptcy cases interpreting these statutes, Plaintiff concludes that "1) plan confirmation is essentially a new contract and 2) that the new contract is binding under [§] 1327." Opp. at 13. As such, Plaintiff contends that it is inaccurate or misleading for Equifax to report debts "in a manner that suggests the status quo remains unchanged." *Id.*

The Court is not persuaded. While the Court acknowledges that Sections 1322(b)(2) and 1327 are relevant to determining the relationship between debtors and creditors in the context of Chapter 13 bankruptcy, Plaintiff cites no authority suggesting that these statutes alter the manner in which a CRA should report an undischarged debt in a credit report. *See* Opp. at 8-16. When confronted with the same argument, the court in *Harris* declined to make the "logical leap" of applying authorities governing the relationship between parties in a bankruptcy action to "make it a [FCRA] violation . . . for a CRA to report a historically accurate pre-confirmation debt or delinquency." 2017 WL 1354778, at *5; *see also Rara v. Experian Info. Sols., Inc.*, No. 16-cv-06376-PJH, 2017 WL 1047020 (N.D. Cal. Mar. 20, 2017) ("[A] confirmed plan does not dictate how historical credit information must be reported under FCRA."); *Doster v. Experian Info. Sols., Inc.*, No. 16-cv-04629-LHK, 2017 WL 264401, at *5 (N.D. Cal. Jan. 20, 2017) ("[A] confirmation order does not constitute a final determination of the amount of the debt, and [thus] it is not misleading or inaccurate to report delinquent debt during the pendency of a bankruptcy proceeding but before discharge."). This Court agrees: there is no legal or logical support for Plaintiff's claim that plan confirmation changes the nature of the debt for FCRA reporting purposes. Moreover, imposing a duty on CRAs to ascertain the "true" nature or amount of a post-confirmation but pre-discharge debt, and to resolve potentially complex legal disputes about what is or is not owed under the bankruptcy plan, goes well beyond what the FCRA requires. *See Cristobal v. Equifax, Inc.*, No. 16-cv-06329, 2017 WL 1489274, at *3 n.4 (N.D. Cal. Apr. 26,

6

2017) (holding that CRA "is not capable or required to resolve a legal dispute between Plaintiff and her creditors about the confirmation plan's effect on the legal status of her debt," and explaining that "[t]he law does not require the CRAs to act as a tribunal or scour a bankruptcy file and make judgments about which debts are included" (citation and internal quotation marks omitted)).

Plaintiff also alleges that Equifax's credit reporting practices violate industry standards. *See* Compl. ¶¶ 131-33. However, courts have repeatedly held that it is neither inaccurate nor misleading to report delinquency post-confirmation but pre-discharge merely because the reporting "was inconsistent with industry standards." *Doster*, 2017 WL 264401, at *5 (listing cases). In addition, the Court need not address whether Plaintiff could support her FCRA claim on the ground that Equifax failed to report her bankruptcy, or reported her bankruptcy in a manner that was otherwise inaccurate or misleading, because she has not sufficiently pled such facts. In fact, the complaint seems intentionally vague as to the details of Plaintiff's credit report. *See, e.g.*, Compl. ¶ 101 (unclear as to whether Equifax reported Plaintiff's bankruptcy); *id.* ¶ 131 (unclear as to whether Equifax used the CII D code). While Plaintiff's counsel may find it easier to file generic boilerplate pleadings in hundreds of different cases, these allegations are facially insufficient to plausibly support a finding of inaccurate or misleading reporting.

Thus, insofar as Plaintiff is alleging inaccurate reporting based on Equifax's reporting of her debts notwithstanding her confirmed bankruptcy plan, the Court finds as a matter of law that Plaintiff cannot sustain a FCRA claim on this theory, and dismisses that claim with prejudice. However, because it is at least conceivable that Plaintiff may be able to allege specific facts showing that the manner of credit reporting was otherwise inaccurate or misleading, Plaintiff is granted leave to amend. Should Plaintiff choose to amend, she must specify exactly how Equifax represented her credit report in a way that was actually inaccurate or misleading, or attach a copy of her report to illustrate her allegations.[1]

---

[1] Because the Court is dismissing Plaintiff's federal claim, it declines to exercise supplemental jurisdiction over her state claim under California Civil Code § 1785.25(a) against Bank of America. *See* Compl. ¶¶ 134-143; 28 U.S.C. § 1367(c)(3); *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010).

7

### B. Failure to Plead Willfulness or Negligence

The FCRA provides a private right of action for willful or negligent violations. 15 U.S.C. §§ 1681n, 1681o. A willful violation covers acts done knowingly or recklessly in disregard of the FCRA's requirements. *Safeco*, 551 U.S. at 57. Such willful noncompliance entitles plaintiff to punitive damages, reasonable costs and fees, as well as either actual damages or statutory damages. 15 U.S.C. § 1681n. A negligent violation, however, only entitles plaintiff to actual damages and reasonable costs and fees. 15 U.S.C. § 1681o. Thus, while "no case has held that a denial of credit is a prerequisite to recovery under the FCRA," *Guimond v. Trans Union Credit Info., Co.*, 45 F.3d 1329, 1333 (1995), a claim of negligent noncompliance nevertheless requires the plaintiff to plead actual damages, 15 U.S.C. § 1681o(a)(1); *see also Harris*, 2017 WL 1354778, at *8 ("[T]o recover under a negligence theory, [the plaintiff] must plead and prove actual damages from [the defendant's] violation of the FCRA.").

Equifax argues that Plaintiff has failed to plead willfulness or negligence. Mot. at 9. Since the Court finds that dismissal is warranted given Plaintiff's failure to plead inaccuracy, the Court does not reach the issue of willfulness or negligence. Nevertheless, the Court notes that Plaintiff's complaint contains only bare conclusory statements that Equifax's actions were done "knowingly, intentionally, and in reckless disregard for credit reporting industry standards." Compl. ¶ 18. Moreover, Plaintiff's opposition did not even defend the sufficiency of her willfulness and negligence allegations, raising questions as to whether she can make any non-frivolous arguments regarding these prongs. Therefore, Plaintiff should only amend these allegations if she can truthfully plead facts that could plausibly show either willfulness or negligence, as required to sustain a private FCRA suit. With regard to willfulness, Plaintiff should note that "a violation is only reckless (and therefore willful) where an employer adopts a reading of the statute that runs a risk of error '*substantially greater than* the risk associated with a reading that was merely careless.'" *See Syed v. M-I, LLC*, 853 F.3d 492, 504 (9th Cir. 2017) (emphasis in original) (quoting *Safeco*, 551 U.S. at 69). Similarly, as to negligence, Plaintiff would need to plead specific allegations regarding any actual damages that she incurred due to Equifax's alleged violation, keeping in mind that a lowered credit score, without more, likely does not constitute

8

actual damages. *See Rara*, 2017 WL 1047020, at *9-10 (finding allegation of diminished credit score insufficient to establish actual damages).

## IV. CONCLUSION

Because reporting a delinquent debt post-confirmation but pre-discharge is not inaccurate or misleading as a matter of law, any amendment to Plaintiff's FCRA claim under this theory against Equifax would be futile. The Court therefore **GRANTS** the motion to dismiss on this ground with prejudice.

However, because it is at least possible that Plaintiff could allege facts showing inaccuracy based on some alternate theory, the Court **GRANTS** the motion to dismiss on this ground with leave to amend. Plaintiff must clearly allege the theory of liability, and the specific facts in this *particular* case that she contends support her claim. The Court will look disfavorably on generalized allegations about what the facts could have been in some other hypothetical case. Plaintiff has one more opportunity to submit a clear, concise and specific complaint, so that the Court can assess whether the allegations in this case are factually and legally sufficient. Any amended complaint must be filed within 28 days of the date of this Order.[2]

**IT IS SO ORDERED.**

Dated: 5/8/2017

HAYWOOD S. GILLIAM, JR.
United States District Judge

---

[2] Plaintiff has filed a request for judicial notice in support of her opposition to Equifax's motion to dismiss. Dkt. No. 43. Because the Court did not rely on the documents in question, the Court **DENIES AS MOOT** Plaintiff's request. The Court further notes that Plaintiff did not cite the documents in her opposition. *See generally* Opp. To the extent that Plaintiff may be offering the documents to defend against a claim of judicial estoppel, the Court need not consider that issue because Equifax did not assert judicial estoppel as a ground for dismissal. *See* Opp at 19; Reply at 2 n.2.

9